UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Keri L. Borzilleri**<br>[REDACTED]<br>(Baltimore City)<br><br>                Plaintiff,<br><br>        v.<br><br>**Marilyn J. Mosby, in her official and**<br>**personal capacities**<br>120 East Baltimore Street, 9th Floor,<br>Baltimore, MD, 21202<br>(Baltimore City)<br><br>**And**<br><br>**The State of Maryland**<br>St. Paul Plaza, 200 St. Paul Place, Baltimore,<br>MD 21202<br>(Baltimore City)<br><br>                Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Civil Action No. _____<br><br>Hon. _____<br><br>**REDACTED VERSION** |

Plaintiff Keri Borzilleri brings this complaint against Marilyn J. Mosby, the current

State's Attorney for the City of Baltimore, in both her official and personal capacities, and the

State of Maryland under 42 U.S.C. § 1983, for violations of her rights under the First

Amendment of the United States Constitution, the Maryland Constitution, and Maryland

common law.  Ms. Borzilleri, by and through her undersigned attorneys, alleges as follows:

## I.        INTRODUCTION

On January 9, 2015, just days after taking office, Defendant State's Attorney Marilyn

Mosby, who was acting under the color of State law, unlawfully terminated Ms. Borzilleri from

her position as an Assistant State's Attorney in retaliation for Ms. Borzilleri's support of

Ms. Mosby's political opponent, Gregg Bernstein.  Up until her termination, Ms. Borzilleri had

served with distinction in the Baltimore City State's Attorney's Office ("State's Attorney's

Office") for over nine years and under two different State's Attorneys; and Ms. Borzilleri's

performance was recognized as exemplary by her supervisors and peers.  Ms. Mosby, however,

terminated Ms. Borzilleri for the sole reason that Ms. Borzilleri had expressed political support

for Gregg Bernstein in the 2014 Democratic primary election for State's Attorney for the City of

Baltimore.  Ms. Mosby's unconstitutional actions have not only caused Ms. Borzilleri substantial

monetary, emotional, and reputational harms, but have also had an incalculable impact on the

city that Ms. Borzilleri has called home her entire adult life.  As evidenced by the alarming rise

in Baltimore's crime rate since Ms. Mosby assumed her duties as State's Attorney, Baltimore has

a continued and urgent need for experienced and skillful prosecutors such as Ms. Borzilleri.

Ms. Mosby's politically motivated retaliation against Ms. Borzilleri was not only unlawful, but

was a disservice to the people of Baltimore.

## II.    THE PARTIES

1.    Plaintiff Keri Borzilleri was employed by the State's Attorney's Office from

August 15, 2005 to January 9, 2015, the date of her unlawful termination.  At the time of her

termination, she was an experienced Assistant State's Attorney who had tried hundreds of cases,

including dozens before juries.  Ms. Borzilleri is currently employed in a different State's

Attorney's Office in Maryland in a supervisory capacity.  At all times relevant to this action,

Ms. Borzilleri has resided in Baltimore City, Maryland.

2.    Defendant Marilyn Mosby is currently the State's Attorney for the City of

Baltimore, a position which she has held since January 5, 2015.  As the State's Attorney for

Baltimore City, Ms. Mosby is an official of the State of Maryland.  At all times relevant to this

2

action, she acted under the authority accorded to her by state law.  She resides in Baltimore City,
Maryland.

## III.     JURISDICTION AND VENUE

3.     This action arises under 42 U.S.C. § 1983, the United States Constitution, the

Maryland Constitution, and Maryland common law.  This Court possesses subject matter

jurisdiction over this action pursuant to 28 U.S.C. § 1331 for the claims arising under Section

1983 and the United States Constitution, and pursuant to 28 U.S.C § 1367 for the claims arising

under Maryland state law.

4.     Ms. Mosby resides in this district.  The acts giving rise to this action also occurred

in this district.  Venue therefore is proper in this Court pursuant to 28 U.S.C. § 1391.

## IV.     FACTUAL BACKGROUND

5.     Ms. Borzilleri is a career prosecutor who has served the State of Maryland, the

City of Baltimore, and two different State's Attorneys with distinction.  She was hired by the

State's Attorney's Office in August 2005 as a law clerk after her graduation from the University

of  Baltimore School of Law.  In January 2006, then-State's Attorney Patricia Jessamy hired

Ms. Borzilleri as an Assistant State's Attorney.  For the majority of her tenure at the State's

Attorney's Office, Ms. Borzilleri was responsible for prosecuting some of Baltimore's most

violent and serious crimes.  In this role, she has handled at least fifty attempted murder cases as

the only prosecutor.  She has also taken over twenty non-fatal shooting cases to trial.  During the

year prior to her termination, Ms. Borzilleri was one of three "Community Prosecutors," a role in

which she prosecuted complex crimes and served as a liaison between the State's Attorney's

Office, the community, and the local police.

6.      Ms. Borzilleri was and remains highly-regarded by her former superiors in the State's Attorney's Office for her professionalism, dedication, and integrity.  Ms. Borzilleri's supervisors consistently rated her performance as "outstanding"—the highest possible assessment—in formal performance evaluations.  In one recent performance evaluation, Ms. Borzilleri's then-supervisors, one of whom is now a Maryland District Court Judge in Baltimore City and another of whom is now a Baltimore City Circuit Court Judge, praised Ms. Borzilleri for the "great pride" she takes in her case preparation and charging decisions.  The same supervisors reported that she presented "her cases in a clear and logical way" and was "very knowledgeable about the facts of her specific cases and always look[ed] to be creative when presenting the evidence to the jury."  Beyond her technical skill, her supervisors noted that Ms. Borzilleri had many intangible attributes that made her an asset in the office.  She worked well with investigating detectives in the Baltimore Police Department, she was respectful and helpful to her colleagues, and above all she was "passionate about her work."

7.      Ms. Borzilleri has also established a reputation as an exceptional prosecutor throughout Baltimore's broader criminal justice community.  For example, in 2009, she won the EXILE award, an honor presented by local, state and federal agency partners, for her criminal prosecution of a repeat offender in Baltimore.  For another prosecution, the United States Attorney for the District of Maryland personally thanked Ms. Borzilleri for her role in securing the conviction of a man accused of conspiring to distribute at least 30 kilograms of heroin.[1] Indeed, criminal *defense* attorneys, who represent individuals whom Ms. Borzilleri prosecuted, have referred to her as one of the "best" prosecutors in the State's Attorney's Office.  As a

---

[1] Press Release, *Baltimore Man Exiled to Over 17 Years In Prison For Heroin Conspiracy*, U.S. Dep't of Justice, Feb. 26, 2010, http://www.justice.gov/archive/usao/md/news/archive/BaltimoreManExiledtoover17YearsinPrisonForHeroinConspiracy.html ("United States Attorney Rod J. Rosenstein thanked Baltimore City Assistant State's Attorney Keri Borzilleri for her assistance in the investigation and prosecution.").

testament to her reputation and experience, Ms. Borzilleri was hired as an Assistant State's Attorney for Prince George's County shortly after her unlawful dismissal.  In just a few short weeks at that office, she was promoted to Assistant Chief of the Strategic Investigations and Community Prosecution Unit that focuses on violent repeat offenders and community prosecution.

8.      Prior to the 2014 state election cycle, Ms. Borzilleri knew Ms. Mosby from their time as young lawyers in the State's Attorney's Office.  Similar to Ms. Borzilleri, Ms. Mosby came to work in the State's Attorney's Office in 2005 as a law clerk after her graduation from law school, and both were hired by then-State's Attorney Patricia Jessamy.  Ms. Mosby and Ms. Borzilleri worked in district court together in 2007.  As she did with all her of her colleagues, Ms. Borzilleri treated Ms. Mosby professionally and with respect.

9.      Their relationship while working together was always cordial and respectful.  In fact, Ms. Mosby would often watch Ms. Borzilleri as she handled cases in the courtroom, and Ms. Mosby complimented Ms. Borzilleri on her demeanor in the courtroom.  When Ms. Mosby's husband, Nick Mosby, ran for Baltimore City Council in 2007, Ms. Mosby invited Ms. Borzilleri to the Mosbys' home for a campaign event.  In fact, Ms. Borzilleri continues to receive correspondence from Nick Mosby's candidate committee, Friends of Nick Mosby.

10.      In 2010, Gregg Bernstein, a Democrat, succeeded Patricia Jessamy as State's Attorney for the City of Baltimore after he defeated her in the Democratic Party primary election.  Mr. Bernstein selected deputies to work directly for him who would provide him with strategic advice and hired several other employees to work in his front office.  Career prosecutors or line attorneys, however, retained their positions in the office, without regard to whether they had supported Mr. Bernstein or Ms. Jessamy in the election.  For instance, Ms. Mosby, who had

campaigned for Patricia Jessamy during the 2010 primary season, continued to work as an

Assistant State's Attorney after Mr. Bernstein assumed office.

**The 2014 Election**

11.       In or around June 2013, Ms. Mosby, who had become a civil litigator at an

insurance company, announced that she would challenge incumbent Gregg Bernstein for the job

of State's Attorney for the City of Baltimore in the 2014 Democratic Primary ("2014 Democratic

Primary").  The 2014 Democratic Primary developed into a fiercely contested race and witnessed

several tense exchanges between the proponents of Mr. Bernstein and Ms. Mosby.  It became

clear during the course of these exchanges that Ms. Mosby and her supporters viewed

Mr. Bernstein and his supporters not only as individuals with differing political philosophies, but

also as personal adversaries.

12.       Although Mr. Bernstein never requested that his employees support him in his bid

for re-election, several of them approached Mr. Bernstein and offered to assist with his

campaign, including Ms. Borzilleri.  The employees who supported Mr. Bernstein in the 2014

election had varying roles and levels of responsibility in his campaign.

A. *Ms. Borzilleri's Involvement in Mr. Bernstein's Campaign*

13.       In Ms. Borzilleri's case, she was not an employee of Mr. Bernstein's campaign,

had no formal title, such as manager or field director, received no payments from the campaign,

and did not participate in campaign events as part of, or while performing, her official duties for

the office.  Nor did she contribute money to Mr. Bernstein's campaign.  Ms. Borzilleri, however,

did not hide her support for Mr. Bernstein during his unsuccessful re-election campaign.  On

June 3, 2014, Ms. Borzilleri hosted a campaign "meet and greet" event for Mr. Bernstein at her

house, which was attended by approximately 20 people, including Mr. Bernstein.  Ms. Borzilleri

publicized the event by circulating electronic leaflets that expressed political support for

Mr. Bernstein's re-election campaign by highlighting his specific accomplishments as State's

Attorney.  *See* Ex. A.  At the event, Ms. Borzilleri introduced Mr. Bernstein and told the

attendees about her experience as an employee in the State's Attorney's Office.  In this

introduction, she publicly introduced Mr. Bernstein to the gathered attendees and expressed that

she supported his re-election campaign because, in her view, he was an effective State's Attorney

who had measurably improved the Office and the Baltimore community.  Ms. Borzilleri also had

several personal conversations with attendees during which she further expressed her support for

Mr. Bernstein's re-election effort.  Mr. Bernstein's campaign posted pictures of the event on its

Facebook page, which was visible to the public.  In addition, a friend commented directly on Ms.

Borzilleri's Facebook page about the June 3, 2014 campaign event.

14.     Upon information and belief, Ms. Mosby learned about this campaign event

through at least one of her supporters, Janice Bledsoe, who was Facebook friends with

Ms. Borzilleri at that time.

15.     Ms. Borzilleri attended another campaign event in Baltimore for Mr. Bernstein at

which she spoke to prospective voters on Bernstein's behalf.

16.     Ms. Borzilleri also publicly expressed her support for Mr. Bernstein's campaign

by placing a Bernstein campaign sign in the front of her house, which was visible to the public

from the adjoining street and sidewalk.

17.     During the months preceding the 2014 Democratic Primary, Ms. Borzilleri

attended a number of community events with Mr. Bernstein because of her position as a

Community Prosecutor.  As a Community Prosecutor, Ms. Borzilleri often went to local events

to represent the State's Attorney's Office.  On at least two occasions, Ms. Borzilleri, while

accompanied by her boss Mr. Bernstein, attended community meetings that Ms. Mosby also
attended. At one of these meeting in the Upton neighborhood of Baltimore at 1200 Pennsylvania
Avenue, on or about March 13, 2014, Ms. Mosby did not formally greet Ms. Borzilleri, but
glared directly at Ms. Borzilleri during Mr. Bernstein's presentation.  At a second community
meeting at the Western District of Baltimore Police Department, all candidates running for local
offices in Baltimore were invited to speak, including Ms. Mosby.  At the Western District Police
Department meeting, Ms. Mosby again looked directly at Ms. Borzilleri, but did not
acknowledge or otherwise greet her.  The purpose of Ms. Borzilleri's attendance at both of the
meetings was not to campaign, but rather was the same as her role at previous events—to
communicate with Baltimore residents about the concerns and needs of their community.  This
information would help her and the State's Attorney's Office in investigating, prosecuting, and
better serving the community.

> B. *The 2014 Democratic Primary and General Election*

18.     The 2014 Democratic Primary took place on June 24, 2014.  In an upset victory,
Ms. Mosby defeated incumbent Mr. Bernstein in the 2014 Democratic Primary.  Because no
Republican candidate had run for the position, Ms. Mosby's only challenger for the position of
State's Attorney in the general election was a write-in Independent candidate, Russell Neverdon.

19.     In the period between the primary and the general election, Deborah Spector, a
close associate of Ms. Mosby, approached Ms. Borzilleri while the two were in court at a bail
review hearing.  As they waited in the courtroom for the judge to call their respective cases,
Ms. Spector turned to Ms. Borzilleri and inquired about whether Ms. Borzilleri supported
Ms. Mosby's campaign, what Ms. Borzilleri's impressions of Ms. Mosby were, and generally

what Ms. Borzilleri "thought about" Ms. Mosby.  Ms. Mosby later appointed Ms. Spector to a managerial position in the State's Attorney's Office.

20.     On November 4, 2014, Ms. Mosby won the general election.

## Ms. Mosby Fires Mr. Bernstein's Supporters

21.     Ms. Mosby was sworn in as State's Attorney for the City of Baltimore on January 5, 2015.  One of Ms. Mosby's first official acts as State's Attorney was to terminate the employment of Ms. Borzilleri, along with several other career prosecutors, many of whom had also openly supported Mr. Bernstein's campaign.

22.     On or about January 6, 2015, Joshua Rosenblatt, one of Ms. Mosby's newly-selected political appointees, came to Ms. Borzilleri's office and closed the door.  He asked Ms. Borzilleri about her current position as a Community Prosecutor.  After she explained the role of the Community Prosecutor and her work to combat gun violence through Operation Ceasefire, Mr. Rosenblatt complimented her on her work and revealed that he would be forming a small unit that would collect and manage intelligence.  Mr. Rosenblatt stated that the new unit would perform work similar to what Ms. Borzilleri was already doing with Operation Ceasefire, and indicated that he was interested in Ms. Borzilleri joining this new unit.

23.     At Ms. Mosby's formal investiture, on January 8, 2015, at the Baltimore City War Memorial, Mr. Rosenblatt pulled Ms. Borzilleri aside to ask her about her support for Mr. Bernstein's campaign.  Specifically, while Ms. Borzilleri was waiting for the proceeding to begin, Mr. Rosenblatt tapped her on the shoulder, told her they needed to talk, and led her past the lines of gathered attendees and into the building's basement.  Once they were in the basement, Mr. Rosenblatt told Ms. Borzilleri that although he was still interested in having her work in the new intelligence unit, he insisted that she describe any connection she had to the

Bernstein campaign so that he could figure out "how to fix the problem" before it became "an issue."  He specifically asked whether she "ran" Mr. Bernstein's campaign or whether she had appeared in any commercials for the Bernstein campaign.  Uncomfortable, Ms. Borzilleri attempted to explain to him that she did not run the campaign, but that she and Mr. Bernstein were often seen together because of her job as a Community Prosecutor.  Mr. Rosenblatt proceeded to say that he had "information" that a person whom he wanted to recruit for his new unit had campaigned for Mr. Bernstein.  In response to Mr. Rosenblatt's reference to campaigning, Ms. Borzilleri did not deny that she supported Mr. Bernstein and acknowledged that she had potential voters over to her house for a meet-and-greet with Mr. Bernstein.  Months later, Mr. Rosenblatt remarked to Ms. Borzilleri that her explanation of her work on Mr. Bernstein's campaign "didn't exactly tell [him] anything helpful."

24.     On January 9, 2015, Ms. Borzilleri received an email from Steward Beckham, Ms. Mosby's freshly-appointed Chief of Administration, directing her to come to a conference room on the ninth floor of 120 East Baltimore Street that afternoon.  The email did not contain any details on why Ms. Borzilleri was being summoned by Mr. Beckham, but only gave Ms. Borzilleri a time that she should appear in the conference room.  At the designated time, Ms. Borzilleri appeared in the front office, unsure of the location of the specific room. Immediately upon walking into the front office, Ms. Borzilleri ran into Mr. Rosenblatt, who escorted her to the proper conference room.  Because of her conversation with Mr. Rosenblatt the day before, she felt nervous and anxious and asked Mr. Rosenblatt if he knew why Mr. Beckham wanted to see her.  She also asked Mr. Rosenblatt directly whether she was being fired, to which Mr. Rosenblatt responded that he did not know; but, he confirmed that the meeting related to their conversation the day before about her support for Mr. Bernstein's

campaign.  After Ms. Borzilleri arrived in the conference room, Mr. Beckham informed her that

she was being terminated, effective immediately.  Mr. Beckham gave no details or reasons as to

why she was being fired, but told her that she would be escorted out of the State's Attorney's

Office that afternoon and given one hour to remove her belongings.  Mr. Beckham also

instructed her to mail in her parking permit.

25.     An armed officer walked a visibly upset Ms. Borzilleri out of the conference room

and by her colleagues to the elevator.  The officer stood closely by her side as the two rode the

elevator with other employees of the State's Attorney's Office from the ninth floor to the

eleventh floor where Ms. Borzilleri's office was located.  On the way to her office, Ms. Borzilleri

and the officer passed the offices of approximately 15 colleagues.  The officer watched as

Ms. Borzilleri cleaned out her desk and tried to collect the personal belongings she had stored in

the State's Attorney's Office for the prior nine years, and put them into a box.  As she and the

officer left her office, Mr. Beckham stopped them and handed Ms. Borzilleri a letter, which he

said he forgot to give her earlier.  The letter, signed by Ms. Mosby, stated that Ms. Borzilleri was

being terminated without cause, effective immediately.  *See* Ex. B ("January 9, 2015

Termination Letter").  The officer and Ms. Borzilleri then took the elevator to the main lobby,

where dozens of individuals who worked in the building walked past them.  Because

Ms. Borzilleri's car was parked in a lot several blocks away, she had to leave her box of

possessions in the lobby while she got her car.  When she returned to the building, Ms. Borzilleri

parked on East Baltimore Street and retrieved her box.

26.     After Ms. Borzilleri had been escorted from the building, another Assistant

State's Attorney walked over to Ms. Borzilleri's office and expressed surprise at her firing.

Noelle Winder, now Noelle Winder Newman, an Assistant State's Attorney whom Ms. Mosby

had recently promoted to a managerial position, was also present at Ms. Borzilleri's office and replied: "We're all attorneys and we all make our own decisions."

27.     Ms. Borzilleri has been, and remains, deeply distraught over her termination. Among other things, she has suffered feelings of anger, betrayal and helplessness; loss of sleep and loss of appetite; strain on personal and professional relationships; and public embarrassment. She had a brief period of unemployment of approximately 60 days between her termination and when she began a new job.  During that period, she did not receive a regular salary and paid for private health insurance out of her own pocket.  In her new job at the State's Attorney's Office for Prince George's County, Ms. Borzilleri's commute has increased to 79 miles roundtrip, as opposed to her 5 mile commute to the Baltimore City State's Attorney's Office.  She also accrues vacation days at a slower rate in the Prince George's County State's Attorney's Office.

28.     Ms. Borzilleri was not the only Bernstein supporter whom Ms. Mosby selected for summary dismissal.  On the day of the 2014 Democratic Primary, Cristie Cole, an employee of the State's Attorney's Office who was campaigning for Mr. Bernstein, saw Marilyn Mosby's husband, City Councilperson Nick Mosby at the polls.  While Cristie Cole and Nick Mosby were at the polls, she expressed her concern about Ms. Mosby's lack of experience for the job of State's Attorney.  Ms. Cole was also terminated by Ms. Mosby "effective immediately" on January 9, 2015.

29.     Ms. Mosby fired another attorney, who gave a statement to the media during the 2014 Democratic Primary on behalf of Mr. Bernstein.  Upon information and belief, Ms. Mosby first notified the attorney that the attorney would be demoted, but days later decided to terminate the attorney "effective immediately."

12

30.     The firing of Ms. Borzilleri and the other Assistant State's Attorneys did and will continue to have a negative effect on pending prosecutions. As *The Sun* reported, in one case, on or about January 13, 2015, Circuit Judge Emanuel Brown "ordered a hearing to determine whether delay caused by a prosecutor's being pulled from the case violates [a] robbery defendant's right to a speedy trial."[2]   In another case, before Circuit Judge Barry Williams, firearms and drug charges against Dontae Small were dismissed in January 2015, after the Assistant State's Attorney handling the case, Grant McDaniel, was fired by Ms. Mosby.  The Assistant State's Attorney assigned to handle Dontae Small's case requested a continuance in light of Mr. McDaniel's firing, but the court denied it.  The Assistant State's Attorney represented to Judge Williams that Mr. McDaniel had nearly 200 cases at the time of his termination.  Incredulous, Judge Williams asked, "So your office made a decision to terminate an individual who had—how many cases?"  To which the Assistant State's Attorney replacing McDaniel responded, "I'm told it is approaching 200."  Nine months later, in October 2015, Dontae Small was arrested on charges of stealing a car at gunpoint, which he allegedly drove through a guarded checkpoint and crashed into a fence at Fort Meade, a secure facility.  When asked by *The Sun* about the dismissal of Dontae Small's case, the State's Attorney's Office did not issue a comment.

31.     In yet another case that took place on January 9, 2015, an attorney was fired during a lunch break in the middle of a trial, and a different attorney with no prior knowledge of the case was sent to complete the trial that afternoon.  That defendant was acquitted on charges of committing a violent crime.

---

[2] Justin Fenton, *Regime Change Brings Shake-up in City Prosecutor's Office*, The Baltimore Sun, Jan. 13, 2015, http://www.baltimoresun.com/news/maryland/crime/blog/bs-md-ci-mosby-office-moves-20150112-story.html.

32.     Ms. Mosby attempted to fire another attorney, who was a vocal supporter of Mr. Bernstein, when the attorney was in the midst of a felony trial.  Only after the attorney's supervisor explained to Ms. Mosby that terminating a prosecutor in the middle of a trial could seriously compromise the ability of the office to proceed against that criminal defendant did Ms. Mosby change her mind and allow the attorney to finish the trial.

33.     Neither Ms. Mosby nor her office has offered a coherent explanation for why these prosecutors were fired.  In an interview with Ms. Mosby on January 21, 2015, Sheilah Kast from Baltimore's NPR news station directly asked Ms. Mosby how many prosecutors she had dismissed.  Ms. Mosby first stated that she would not "talk about personnel issues," but went on to elaborate that "with any administration there's change" and, among other analogies, likened her firing of career prosecutors to what happens "when football teams change coaches." Officials from the State's Attorney's Office made similar comments to *The Sun* in January 2015, obliquely stating that "with new leadership comes change" and that they were "working diligently to ensure a swift transition."

34.     The transition, however, has not gone smoothly.  Ms. Mosby fired six veteran prosecutors upon her arrival at the State's Attorney's Office, and at least thirty more prosecutors left of their own volition after seeing their colleagues fired.  As one commentator and former Assistant State's Attorney observed, these attorneys' "cases were redistributed to new prosecutors who were forced to try the cases unprepared or plea them to incredibly low sentences."  In some cases, as with Dontae Small, judges dismissed the charges altogether.  It has

been documented that this year alone no fewer than five individuals who murdered someone in the City of Baltimore were previously released in cases under Ms. Mosby's administration.[3]

35.     The attrition has even affected key members of Ms. Mosby's leadership team.   In or around August 2015, Joshua Rosenblatt, who once served as her deputy overseeing the Criminal Strategies Unit, left the State's Attorney's Office to re-join the Baltimore Police Department.

36.     On information and belief, the State's Attorney's Office remains in need of additional experienced prosecutors.  By August 2015, the number of murders in Baltimore City (212) surpassed New York City (208) notwithstanding that Baltimore has a much smaller population than New York City.  By November 2015, the number of killings rose to over 300, more homicides than the City has seen since 1999 and the greatest per capita murder rate in Baltimore's history.[4]  As of the date of the filing of this Complaint, there have been 322 reported murders thus far in 2015.  The number of non-fatal shootings has also risen dramatically in 2015, with a reported 80% increase over the prior year.  Even with this rise in crime, as a former prosecutor for the State's Attorney's Office has noted that, "[f]elony prosecutor positions have been left vacant for months while Ms. Mosby added staff to her media team and community outreach people."[5]  In fact, Ms. Mosby's office expanded and reconfigured the physical space of the office reserved for the executive team, reassigning offices that once were allocated for prosecutors into offices for members of her public relations staff.

---

[3] *See* Roya Hanna, *Former Baltimore Prosecutor: Marilyn Mosby has a Role in City's Violence Increase*, The Baltimore Sun, Aug. 12, 2015, http://www.baltimoresun.com/news/opinion/oped/bs-ed-mosby-role-20150812-story.html.
[4] Kevin Rector & Justin Fenton, *Per capita, Baltimore reaches its highest ever homicide rate*, The Baltimore Sun, Nov. 17, 2015, http://www.baltimoresun.com/news/maryland/baltimore-city/bs-md-ci-homicide-per-capita-20151117-story.html (reporting that "2015 has officially become the deadliest year, per capita, in Baltimore history" after the City recorded its 300th homicide victim this year).
[5] Hanna, *supra* note 3.

37.     Ms. Mosby had no licit motive for firing Ms. Borzilleri or many of the other employees of the State's Attorney's Office.  Instead, Ms. Mosby's actions were animated by malice and deliberate disregard for the constitutional and common law rights of Ms. Borzilleri. Ms. Mosby knew, or should have known that, by retaliating against Ms. Borzilleri, as well as other career staff in the State's Attorney's Office, on the basis of Ms. Borzilleri's political beliefs, political expression, and associational rights, she was violating Ms. Borzilleri's right to be free from political  retaliation.

38.     Ms. Mosby is an attorney, and in fact the highest ranking prosecutor for Baltimore City.  Because of her legal training, she is keenly aware that the First Amendment to the U.S. Constitution protects all public employees, including at-will employees.  Being a member of the Maryland bar and having practiced in Maryland throughout her career, she is also intimately familiar with Article 40 of the Maryland Declaration of Rights, which guarantees "that every citizen of the State ought to be allowed to speak, write and publish his sentiments on all subjects," and Maryland law which prohibits the discharge of an at-will employee in contravention of a clear mandate of public policy.

39.     In an attempt to justify these unlawful terminations, Ms. Mosby has knowingly misinformed the employees of the State's Attorney's Office concerning their constitutional, statutory, and common law rights.  For example, Ms. Mosby has amended the Policy Manual for the State's Attorney's Office to state, erroneously, that, as at-will employees, employees of the State's Attorney's Office may be terminated "at any time, for any reason, or for no reason at all." *See* Ex. C (excerpt of the 2015 Policy Manual, Office of the State's Attorney for Baltimore City). Ms. Mosby has demanded that all employees sign a form acknowledging this misstatement of the law.  Nowhere on these forms or in the Policy Manual does Ms. Mosby make clear that

16

employees may not be fired in violation of their constitutional, statutory, and common law rights, including, but not limited to, their First Amendment right to support a political candidate of their choosing.

### The State's Attorney's Office Insists that Ms. Borzilleri's Termination Was Not Due to a Lay-Off or Elimination of the Community Prosecutor Position

40.      Soon after her termination, Ms. Borzilleri contacted the City of Baltimore Employees' Retirement Systems to determine whether she would be eligible for a deferred vested pension and submitted the January 9, 2015 Termination Letter to that office.

41.      Pursuant to Baltimore City Code, a participant in the City of Baltimore Employees' Retirement Systems ("CBERS" or the "Retirement Systems") is eligible for a deferred vested pension after five (5) years of service in a covered position if that employee is laid off due to no fault of her own, such as when an employee's position has been eliminated. *See* Baltimore City Code Article 22, Section 9(*l*)(2).  An employee who has not been laid off in this manner is not eligible for a deferred vested pension until she has completed ten (10) years of service.  At the time of Ms. Borzilleri's termination, she had accrued nine years, four months, and 25 days of service toward her pension in the Retirement Systems.

42.      Initially, a representative of the Retirement Systems told Ms. Borzilleri that she was not eligible for a deferred vested pension because the January 9, 2015 Termination Letter was not sufficient to show that her position was eliminated or that she was in a position requiring appointment and not subsequently reappointed.

43.      On April 7, 2015, Ms. Borzilleri, through her attorney, contacted Steward Beckham in the State's Attorney's Office to request documentation that would assist her in establishing eligibility for a deferred vested pension under CBERS.

44.    In response to her April 7, 2015 letter, Mr. Beckham wrote Ms. Borzilleri on

April 16, 2015, to reiterate "that Ms. Borzilleri's position *has not been eliminated* by [the State's

Attorney's] Office."  Ex. D (emphasis added).

### After Ms. Borzilleri Notified Defendants of Her Constitutional and Statutory Claims, the State's Attorney's Office Re-Characterized Her Termination

45.    On April 20, 2015, Ms. Borzilleri sent a letter to the State Treasurer Nancy Kopp

in accordance with the requirements of the Maryland Tort Claims Act, Md. State Gov't Code

§ 12-101 *et seq.*, to provide notice of her claims against the State of Maryland in connection with

the termination of her employment as an Assistant State's Attorney for the City of Baltimore on

January 9, 2015 ("MTCA Notice Letter").  In the MTCA Notice Letter, Ms. Borzilleri informed

the State of Maryland that "Ms. Mosby's politically motivated decision to terminate

Ms. Borzilleri's employment violated the First Amendment to the United States Constitution,

Article 40 of the Maryland Declaration of Rights, and Maryland . . . law."  Specifically, the

MTCA Notice Letter stated that Ms. Mosby's termination of Ms. Borzilleri violated the First

Amendment because it constituted retaliation based on Ms. Borzilleri's political allegiance.  The

termination also violated Ms. Borzilleri's right to engage in expressive speech.  Because the

protections under Article 40 of the Maryland Declaration of Rights are co-extensive with those

under the First Amendment, Ms. Mosby's politically motivated decision to fire Ms. Borzilleri

also violated her rights under the Maryland Constitution.  Finally, the MTCA Notice Letter

explained that the termination was unlawful under the cause of action of abusive discharge,

which is recognized by Maryland common law.

46.    In closing, the MTCA Notice Letter requested that the State grant Ms. Borzilleri

relief that could only begin to make her whole in light of the damage that the termination has

inflicted on her professionally and personally.  Among other things, Ms. Borzilleri requested that

the State:  compensate her for her actual monetary damages; provide the documentation

necessary to receive a deferred vested benefit or a lump sum equal to the amount necessary to

purchase nine years of service credit from her current employer; and grant her other equitable

relief.

      47.      On April 22, 2015, the Treasurer's office acknowledged receipt of

Ms. Borzilleri's MTCA Notice Letter.

      48.      Nearly six weeks after Ms. Borzilleri sent her MTCA Notice Letter and almost

eight weeks after Mr. Beckham had informed Ms. Borzilleri that her position *had not* been

eliminated, Ms. Borzilleri received notice that she was now eligible for a deferred vested pension

based on her service at the State's Attorney's Office.  In a letter, dated June 11, 2015, the

Retirement Systems ("CBERS Letter") wrote the following:

> Because you were a member of the Employees' Retirement System
> for 10 or more years (***5 or more if your job was abolished***), you
> are a vested member and you are entitled to receive a deferred
> vested retirement benefit.

(Emphasis added).  The letter then noted that Ms. Borzilleri's "deferred vested retirement benefit

was calculated on your retirement system membership service of 09 years, 04 months and 25

days."  The CBERS Letter made no mention of Ms. Borzilleri's prior dispute with the office or

the prior position of the State's Attorney's Office that her position had not been eliminated.  On

information and belief, Ms. Mosby and/or other employees of the State instructed the Retirement

Systems to classify Ms. Borzilleri's termination as a lay-off after they received her MTCA

Notice Letter.  To date, neither the State nor the State's Attorney's Office has supplied any

explanation for their abrupt change in position over the course of several weeks—from

Mr. Beckham's representation in writing on April 16, 2015 that Ms. Borzilleri's position was not

eliminated to the Retirement Systems' determination on June 11, 2015 that Ms. Borzilleri's

position was eliminated.

49.     More than six months have elapsed since Ms. Borzilleri notified Defendants of

her claims through her MTCA Notice Letter.  Apart from acknowledging receipt of the letter,

Defendants have not made a determination concerning the merits of her claims.  Thus,

Ms. Borzilleri has satisfied the administrative exhaustion requirements of the Maryland Tort

Claims Act.

**COUNT I**
**VIOLATION OF 42 U.S.C. § 1983**
**FIRST AMENDMENT PATRONAGE DISMISSAL**

50.     Ms. Borzilleri repeats and incorporates the allegations contained in paragraphs 1

through 49 of this complaint as if fully set forth herein.

51.     In the 2014 Democratic Primary, Ms. Borzilleri engaged in overt political

association with Mr. Bernstein and expressed her support for his re-election campaign for State's

Attorney for the City of Baltimore.  Her campaign-related work was easily discoverable on

social media, particularly on Facebook.

52.     On information and belief, Ms. Mosby in fact knew that Ms. Borzilleri supported

Mr. Bernstein in the 2014 Democratic Primary because her future deputies, Janice Bledsoe,

Deborah Spector and Joshua Rosenblatt, told Ms. Mosby of Ms. Borzilleri's political affiliation.

Ms. Mosby had no legitimate reason to terminate Ms. Borzilleri, but instead terminated her

solely because of Ms. Borzilleri's support for Mosby's opponent, Gregg Bernstein, in the 2014

Democratic Primary.

53.     Although Ms. Borzilleri dedicated her personal time and resources to assisting

Mr. Bernstein's campaign for State's Attorney, Ms. Borzilleri's official duties were not that of a

20

policymaker or a communicator, and she was not privy to confidential information.

Ms. Borzilleri was a line prosecutor in the State's Attorney's Office, and her responsibilities as a prosecutor did not fundamentally change with the election of each new State's Attorney.  Indeed, before Ms. Mosby took office, Ms. Borzilleri served as an Assistant State's Attorney under two different State's Attorneys who had campaigned against one another—Patricia Jessamy and Gregg Bernstein—without incident.

54.     At the time of Ms. Borzilleri's termination, it was clearly established that the First Amendment protects career government employees from being fired during a political transition by a State official merely because of their support for the incoming State official's political rivals.

55.     By terminating Ms. Borzilleri because she supported Mr. Bernstein's campaign, State's Attorney Mosby, acting on behalf of the State of Maryland, retaliated against Ms. Borzilleri for the exercise of her rights of political association and the expression of political allegiance in contravention of the First Amendment.

## COUNT II
## VIOLATION OF 42 U.S.C. § 1983
## FIRST AMENDMENT RETALIATION FOR EXPRESSIVE SPEECH

56.     Ms. Borzilleri repeats and incorporates the allegations contained in paragraphs 1 through 49 of this complaint as if fully set forth herein.

57.     Ms. Borzilleri's support of Mr. Bernstein constituted expressive speech on a matter of public concern.  As a longstanding citizen of the City of Baltimore, Ms. Borzilleri had a strong, personal interest in expressing her political views on the candidates for State's Attorney.  Ms. Borzilleri expressed her views as a citizen by, among other things, hosting a meet-and-greet event for Mr. Bernstein at her home, distributing electronic leaflets to the event,

being identified in posts on Facebook as a supporter of Mr. Bernstein, placing a campaign sign in the front of her house in full public view, and encouraging prospective voters to support Mr. Bernstein.  Ms. Borzilleri's communications about the State's Attorney's 2014 Democratic Primary race took place outside of her workplace at the State's Attorney's office and were not part of her actual or expected duties.

58.     On information and belief, Ms. Mosby had actual knowledge that Ms. Borzilleri had engaged in political expression in support of Mr. Bernstein in the 2014 Democratic Primary because her future deputies, Janice Bledsoe, Deborah Spector, and Joshua Rosenblatt, told Ms. Mosby of Ms. Borzilleri's statements made in support for Mr. Bernstein.  Ms. Mosby had no legitimate reason to terminate Ms. Borzilleri, but instead terminated her because, outside the workplace, Ms. Borzilleri expressed her opinion about the two Democratic candidates running in the 2014 Democratic Primary.

59.     The State of Maryland has no interest in stifling political expression on the part of its employees, or in requiring career prosecutors to support the political campaigns of the particular State's Attorney who happens to win office.  Terminating career prosecutors based on their political expression would undermine, rather than promote, the effective performance of the criminal justice system.  For this reason, the Maryland General Assembly has expressed the State's interest in *promoting* the political expression of its employees by enacting legislation that protects such expression.  *See* Md. Code, State Personnel and Pensions Article, § 2–304.

60.     The First Amendment right of a government employee to express political views while acting in a purely personal capacity where, as here, there is no disruption to the employee's governmental workplace was clearly established at the time Ms. Mosby terminated Ms. Borzilleri.

61.     Because Ms. Borzilleri's personal interest in expressing her opinion concerning the best candidate for State's Attorney far outweighed any interest Defendants could have had in restricting this speech, Ms. Mosby violated Ms. Borzilleri's rights guaranteed by the First Amendment when Ms. Mosby fired Ms. Borzilleri in retaliation for engaging in protected speech.

## COUNT III
## VIOLATION OF ARTICLE 40 OF THE
## MARYLAND DECLARATION OF RIGHTS

62.     Ms. Borzilleri repeats and incorporates the allegations contained in paragraphs 1 through 61 of this complaint as if fully set forth herein.

63.     Maryland Courts have recognized that Article 40's protections are generally "co-extensive with the protections of the First Amendment" of the United States Constitution. *Newell v. Runnels,* 407 Md. 578, 608 (2009) (internal quotation marks omitted).

64.     Ms. Mosby's politically motivated termination of Ms. Borzilleri violated Ms. Borzilleri's right under Article 40 of the Maryland Declaration of Rights and its protection against termination based on political affiliation.

## COUNT IV
## VIOLATION OF ARTICLE 40 OF THE
## MARYLAND DECLARATION OF RIGHTS

65.     Ms. Borzilleri repeats and incorporates the allegations contained in paragraphs 1 through 61 of this complaint as if fully set forth herein.

66.     Ms. Borzilleri's politically motivated termination also violated Ms. Borzilleri's right of free expression under Article 40 of the Maryland Declaration of Rights.

**COUNT V**
**COMMON LAW—ABUSIVE DISCHARGE**

67.     In the alternative to Counts I, II, III, and IV, Ms. Borzilleri repeats and

incorporates the allegations contained in paragraphs 1 through 66 of this complaint as if fully set

forth herein.

68.     Maryland law grants public employees the right to "freely participate in any

political activity and express any political opinion," subject only to the restrictions that they not

"engage in political activity while on the job during working hours" or "advocate the overthrow

of the government by unconstitutional or violent means."  Md. Code, State Personnel and

Pensions Article, § 2–304 (State employees); Md. Code, Local Government, § 1-303-04 (local

government employees).

69.     Ms. Mosby's decision to fire Ms. Borzilleri because of Ms. Borzilleri's

participation in political activities on behalf of Mr. Bernstein and her statements in support of

Mr. Bernstein violated the express mandate under Maryland law that public employees retain the

right to participate in any and all political activities and express political opinions.

70.     As a result of the termination, Ms. Borzilleri has sustained monetary damages,

including lost pay during a brief period of unemployment, lost vacation days, increased

commuting costs, and health insurance.  In addition to these monetary damages, she has suffered

harm to her reputation and emotional distress.

71.     To the extent that Ms. Borzilleri is unable secure relief pursuant to Counts I, II,

III, and IV of this complaint, Ms. Borzilleri has no other remedy available to her other than under

Maryland common law.

72.     Nor does Ms. Borzilleri have an adequate administrative remedy available.  In her

MTCA Notice Letter, Ms. Borzilleri previously asked the State of Maryland to provide her with

relief, but the State and Ms. Mosby have failed to respond to any of the substantive allegations and have not acknowledged Ms. Borzilleri's entitlement to any relief.

## REQUEST FOR RELIEF

WHEREFORE, Ms. Borzilleri respectfully requests that this Court:

A.  Enter judgment against Defendants and in favor of Ms. Borzilleri on Counts I, II, III, and IV of the complaint;

B.  Alternatively, enter judgment against Defendants and in favor of Ms. Borzilleri on Count V of the complaint;

C.  Award Ms. Borzilleri damages that she sustained as a result of Defendants' wrongful actions in an amount to be determined at trial;

D.  Award Ms. Borzilleri enhanced damages as permitted by law;

E.  Award Ms. Borzilleri attorney's fees and costs associated with bringing this action; and

F.  Grant such other relief as the Court deems just and proper.

## JURY DEMAND

Ms. Borzilleri demands a jury trial on all issues triable by jury.

Dated: December 9, 2015

/s/ *Stacey K. Grigsby*
Stacey K. Grigsby
   (Bar No. 28090)
   sgrigsby@bsfllp.com
Ryan Park
   (admission pro hac vice pending)
   rpark@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue NW
Washington, DC 20015
Tel. 202-237-2727
Fax 202-237-6131